We now have next for argument Garcia-Lopez v. Barr and you may proceed. Good morning. May it please the court, my name is Kari Hong and I represent Iris Garcia. I will address credibility, withholding, and then count. The IJ credibility decision consists of the following, quote, the court is convinced, in short, that this respondent would do or say whatever is present in the United States. The court cannot and will not find, she testified in a credible fashion, I will not cite all the inconsistencies and contradictions in her testimony because her application is fatally flawed. This is at AR 29 to 30. Trusta requires that the IJ, quote, provides specific instances in the record that form the basis of the agency's adverse credibility determination, unquote. This IJ's refusal to explain his reasons is contrary to law and is reason enough to reverse the credibility finding. For several, I don't, did did you challenge, did your client challenge that credibility finding before the BIA? Well your honor, oh I apologize, she she uh represented herself pro se on the appeal and this is quote, we do not find it necessary to address the adverse credibility finding, unquote. Under exhaustion, the IJ, but it also says the applicant has not challenged the adverse credibility finding on appeal. Yes, but under exhaustion the fact that the BIA was aware of the defect and then elected to avoid it and address it nonetheless is adequate under the BIA's decision is error because the BIA expressly declined to adopt the adverse credibility finding who the holder and Ming Dai required this court then to treat this testimony as credible. Turning to the withholding and cat claims, the IJ's credibility error is consequential because unlike other decisions, the BIA did not say nonetheless we assume her credibility and then we'll proceed to the merits. That's what happened in who would be holder but here the BIA was silent and that means that the BIA's reasons for denying withholding and cat cannot stand because the BIA did not account for any of the facts in Marcia, in Ms. Garcia's testimony that are in fact credible. On the withholding issue, there are two issues. First, as argued in the brief, whether Guatemalan women is a particular social group is a legal issue that this court has authority to decide. But before we reach that, I mean that was not raised before the IJ, is that correct? Correct. And it was alluded to and raised to the BIA, correct? Yes, your honor and I would say it was more than alluded to. It's basically the gravamen of her appeal as again excerpted in the reply brief. So what if she raised it, then what are the legal consequences of that given the BIA's ruling? So if the court can proceed on one of two paths, on the first path assuming exhaustion, this court has the legal authority to declare that Guatemalan women is a legal group. If that occurs, the court would then still need to remand for the BIA to then determine whether the nexus is met and whether she qualifies under that particular group. So remand is still required. If the court proceeds to do the legal authority, the reasons in the opening brief set forth why after 10 years of waiting, it would be compelling and important for the court to make that declaration and that is adequately exhausted on this record. Why would we step in to address that in the first instance if it's not BIA? I mean there's a possibility we could do that, but isn't that something really more in the administrative province of the BIA to address? Hernandez-Montiel and Mohamed say no. In Hernandez-Montiel, this court was the first one to declare that gay men with female sexual identities is a particular social group. The agency had not. In Mohamed, this court declared, quote, Somalian females is a particular social group even though the agency had not. This court, and usually remand is appropriate when it's a novel issue, but as cited in the brief, there have been 10 years and over 10 cases where the matter has been remanded for the BIA and it is not addressing this issue. The first circuit case, the Pena, has recognized that the two reasons that the BIA on this record rejected this group as being lacking particularity and lacking sexual distinction are just fatuous. In the first particularity is met for gender plus nationality claims. On this record, the worm started bothering her after recognizing she has no husband. Others warned her that he attacks women, and he sought the violence in the form of rape, which is a gender-based form of persecution. The BIA also erred in finding that gender lacked social distinction. Again, De Pena noted that marked by social distinction. Women are marked as women by their appearance, by different clothing, by hairstyles, and different mannerisms. In addition, on this record, there's unrefuted evidence of gender-based violence, targeted legislation in Guatemala protecting women, and then the worm targeting Ms. Garcia with rape again because she had no husband. Second to your earlier question, Judge McEwen, on the second path, if the court disagrees and wants to stop short of that, we agree with the government's alternative request for remand. The Ninth Circuit says case law requires a particular group to be a fact-specific, case-by-case analysis. When the BIA just bungled this credibility determination, it had no facts to do that properly. At a minimum, remand is warranted to send it back to the BIA, but we'd also like to underscore that the court has the authority to reach it if it so desires. That's okay. Couldn't the BIA's decision be construed as reaching the particular social group of Guatemalan women? You know, your client used a bunch of terms to describe generally the same ballpark. Why couldn't we, why couldn't the BIA just narrow those terms into what they described as single women, single Guatemalan women who are threatened with harm? So couldn't we hold that the BIA did address the particular social group and just deny it? Well, Your Honor, I argue in the Rule 28 chair letter that's exactly what they did. If you look at the five groups that she raised, the only thread is gender. And in support of that, she cited gender-based violence and gender-based legislation and being a woman. And the very fact that the BIA seized on that by saying, well, single women lack particularity and distinction, I would very much say that the BIA did address that. I cited to the Sylvester Mendoza case from 2018, where the Ninth Circuit did just that, where they rejected the more specific group and said, well, the Gravamen was gender. That was before the BIA. And here, this record is even stronger because pro se, I would assert that she only raised a gender-based claim, which is why the only group I raised in the opening brief was Guatemalan women, because that was the Gravamen in essence of her complaint and the heart of the reason for her persecution. So Your Honor, I would submit that this was exhausted. This is the Gravamen, and it is time after 10 years and on the Kat claim, again, the BIA's decision is flawed because it excluded all the facts that this court has found to be credible. The BIA erred in finding no future torture, but in the decision, it never mentioned that the threat was rape. Rape is a form of torture, and the BIA erred by discounting the fact that she has been threatened with it. Even if the BIA had credited all the statements on acquiescence by a public official, would you still fall short of the showing you need to make, particularly in light of what you cited just a moment ago, the legislation in Guatemala on gender-based violence? Your Honor, so Chia Jaime would say no. In that situation, even though there is evidence of attempts by the Mexican government to kind of redress certain forms of violence, on this record, there's also ample evidence to show that they are unable to do so. And what's important on these facts, the police did not apprehend the worm out of lack of resources or they couldn't find him, which would satisfy acquiescence. What happened here is that the police is disinterested in helping her. They called her crazy. They discount the harm of gender-based violence, and they wanted to bribe. Those are reasons that show acquiescence by a local public official. Thank you. You have exceeded your time. Thank you, Your Honor. We'll hear from the government. Good morning, Your Honors. May it please the Court, Alexander Luce for the government. Your Honors, I'll take up adverse credibility, withholding of removal, and cap protection as well in that order, just to address the various points brought up in opposing counsel's presentation. First, turning to adverse credibility, that really is a non-issue in this case, because the immigration judge did not rest his decision on it, and the Board also did not rest its decision on that. Where it's not part of the agency's decisions, it's not a basis for remand. And I'd point out, Your Honors, that Petitioner appeared to agree with us about that point in her reply brief, so I'm a bit surprised to hear her argument today. As I look at page three of her reply brief, I see the IJ express concerns over Ms. Garcia's Lopez's testimony, but stop short of finding her not credible. The government agrees the IJ did not make a credibility finding. And then skipping to the next paragraph, I see on this record the Board was aware of the IJ's conduct, but again expressly deferred from weighing in on this matter. I think the fair way to read the agency's decisions here is that at the close of the Petitioner's merits hearing, which is when the IJ rendered decision, there were concerns about the Petitioner's credibility. And the even if I deemed her credible, her claim would fail on the merits. And then he goes into a discussion of matter of AB and why her proposed particular social group was not cognizable. And on appeal, the Board said, let me turn to the appropriate page here, we do not find it necessary to address the adverse credibility finding. And then the Board proceeded to acknowledge all the facts that Petitioner just suggests the Board ignored. The applicant fears returning to Guatemala because she was threatened, followed, and robbed by a man in the marketplace. According to the respondent, the police did not help her. The Board doesn't indicate it didn't find those facts credible. The Board says, we're not going to reach credibility, we're going to look at the merits. That's the way that the decision is structured. That's the way it's fairly read. And that's the way up until just a few moments ago, it appeared in briefing, the parties had agreed to read the agency's decisions. So we respectfully suggest the Court just doesn't need to address adverse credibility. It's not a basis for remand. It's not a basis for those decisions. Turning to withholding of removal, Your Honors, with great respect, the Court should not address the proposed particular social group of Guatemalan women in the first instance. And once again, there's a bit of incongruity here between the arguments made in briefing and the arguments made today. In Petitioner's opening brief, she did explicitly say that the Court should take up that issue in the first instance. And in our answering brief, we noted several reasons why the Court should not do that, each of which independently precludes the Court from getting to that argument. Number one, that was the exact basis for the Supreme Court's reversal of this Honorable Court in both Gonzalez v. Thomas and Ines v. Orlando Ventura. There's an ordinary remand rule that says that where there's an issue that's within the agency's wheelhouse that the agency hasn't addressed, this Court should not address it in the first instance. Furthermore, this Court has said and the Board has said, and I'm looking in particular at this Court's opinion in Diaz-Torres, particular social group is an incredibly fact-intensive determination that is necessarily case-specific. And for that reason, the agency has to analyze it on a case-by-case basis, and so too does this Court. So the Petitioner's argument that this Court should say any gender plus any nationality is a particular social group would require this Court to abrogate its own prior precedent. And furthermore, we noted the issue is not exhausted because it was raised to the Board in a posture where the Board could not address it. Each of those reasons independently augurs against this Court reaching a brand new particular social group that the agency hasn't had an opportunity to address and has not addressed. Yes, I don't want to interrupt, but you had quite a few points integrated into your last statement, so I just wanted to take out one of those related to exhaustion. And to me that she did exhaust this by raising it to the Board, but that of course shouldn't be confused with waiver, which is a understanding why the government argues it wasn't exhausted as before the Board. I understand, Your Honor, and I point out just at the threshold that even if the Court does think it was exhausted, it should still deny this petition for review for the numerous other reasons we identified in briefing and that I just have begun to outline an argument. But to Your Honor's point directly, the reason it wasn't exhausted is because exhaustion isn't a formalistic doctrine. And I'd note that the petitioner herself addresses those points as well at page 13 of her opening brief. The parties appear to agree that the point of the exhaustion doctrine, as this Court has said, is to give an agency the opportunity to address an issue, and this Court does not employ exhaustion in a formalistic manner. Now the upshot of those points is that the petitioner raised Guatemalan women to the Board in a posture where the Board inarguably could not have addressed it. And as a result of that, they did not address it. So on exhaustion, the question for this Court, I suppose, is given that the purpose of the exhaustion doctrine is to prevent the Court from prematurely interfering with an agency process by allowing the Board to address an issue, or at least the opportunity to address an issue, is that goal met where a petitioner raises an issue for the first time before the Board, and as a result, the Board, under the regulations creating it, cannot address that issue. You know, that seems to me to be kind of legal doublespeak in that she raised the issue. The Board could have said you waived it because you didn't raise it before the IJ, and it wasn't developed in a certain way before the IJ. That would be one option for the Board. But of course, the Board decision talks at length about single Guatemalan women and single women as a social group. So it does seem like your argument is kind of falling back over itself. I mean, the Board didn't say you waived the argument. The Board proceeded to address it in part, didn't it? Well, a couple of points in response to your Honor's question. First, if the Board had said pretty much the only thing it could say here, which is these groups were raised to us in the first instance, under the regulations creating the Board, under matter of Federenco, under matter of WIC, we cannot address this in the first instance on appeal, and so we deem it waived or forfeited and do not address it. If the Board had explicitly said that, then the Court would have, the Court would be reviewing that determination by the Board that the case would, in other words, what I'm Okay, let's stop there. If the Board had said that, we would have a clear statement from the Board and then we would determine yes or no, was there, you know, this waiver. But the Board didn't say that. So we don't have a waiver determination, but you argue, well, it wasn't exhausted, but that's your brief seems to mix and match between exhaustion and waiver. So exhaustion is a distinct doctrine as to whether it was raised to the Board. Now, it may have been raised in a way that they can't deal with it, but that's not what the Board said. So I'm having trouble because I, we can't really read between the lines of the Board decision, can we? I think we can't hear, Your Honor, because here there's only one thing the Board could have done. And what I want to make clear is I'm talking about exhaustion and waiver slightly differently because the petitioner is making two different arguments. To the extent the petitioner says this Court should address Guatemalan women on the merits, the merits of that group are not exhausted because the Board didn't have the opportunity to take them up and didn't take them up. To the extent she's arguing the Board erred by deeming this waived, it should have explicitly and the Court needs to send it back, I agree the Court can look at that issue. That issue, there's no higher tribunal she could have made that argument to. That issue is squarely in front of the Court. The question of whether the Board should have sent it back. But there is no need for a remand here because as we point out in our answering brief, there's only one thing the Board could have done here. The only thing they could have done is declined to reach this issue. This Court recently said... What about the argument that the court, the BIA did reach the issue that they, you know, that the five social groups that Ms. Garcia raised, they actually consolidated into that single Guatemalan women who fear harm and so therefore the BIA did address it and did get to the merits. I respectfully disagree with that, Your Honor. I don't think that's a fair way to read the record that opposing counsels engaged in here. If we look at this Board decision, what it says is the applicant claims she belongs to a particular social group of single Guatemalan women who are threatened with harm and are not helped by the police. It's important to note that the petitioner was counseled throughout her proceeding before the immigration judge. The immigration judge... But counsel, I'm sorry, but the BIA also said the terms, plural, used to describe the applicant's purported social group. So it suggests that the Board recognized that Ms. Garcia used multiple terms to express the single social group. Your Honor, multiple terms are not multiple groups. She had the opportunity through counsel to articulate a group and the immigration judge evaluated the group that she did articulate. And the Board's decision here says the proposed group lacks particularity in as much as it is amorphous. The terms used to describe the group. So the Board is looking here at one group that was raised to the immigration judge and properly raised to the Board and identifying the parts of it that are problematic and stop it from being cognizable. But there's nothing in this decision to suggest that they viewed single women as a separate group. And even if they had, that's a different group from Guatemalan women. So there's no reason to make the further leap that addressing single women, which the Board didn't do, equates to a treatment of Guatemalan women. Your Honor, I see I'm over time. So unless there are any further questions from the panel, we respectfully request that the Court deny the petition for review. Thank you. Thank you. We have a minute for rebuttal. Thank you, Your Honor. I have one point. Perdoma, Hernandez Montiel, Mohammed all provide that the cognizability of a particular social group is a legal issue. The ordinary remand rule provides that factual matters must be remanded to agency. Because this is a legal question, the Court has the authority to address it. Just ask one question, and that is the Board's statement that if you define this group in part on the fear of threats against the women, that that's an improper construct, because you don't define it by the threats, you define it by the group. Your Honor, she never addressed that issue in her pro se briefing. I never addressed it in the opening brief. This Court has long held that defining a social group by its persecution is not proper. That's more of an AB issue. And that's why her groups, her five groups that she raised actually did not mention persecution. Can I ask one follow up? I'm a little confused about your argument. Are you saying that the BIA did reach Guatemalan women? And so if so, then why couldn't we reach the merits of that decision? Yes, Your Honor, I agree. I believe the BIA did. And I believe that the way that they addressed it was not as Judge McEwen just mentioned about a violence issue or AB issue. They addressed it by particularity amorphous and saying that there are too many women to be part of the group. And they referred to single women, which Silvestre very much says that is the gravamen of the gender-based claims. And it erred on a misunderstanding that gender is too amorphous and lacks a social distinction. And so we wouldn't have to remand on that if we agree with you. If you agree with me, you can reach this. Hernandez Montiel, Perdomo, Mohamed, give this Court the authority to address the legal issue and the cognizability of what is a particular social group or not. I do want to take issue with you said, well, that's an AB issue. Well, in fact, that's exactly what the board said on the threat on the fear of threat. And they said, of course, first, you have to have the social group before you can get to that issue. It doesn't get intertwined. So I just want to point out the board explicitly made that determination. I want to thank both for your argument this morning and the case just argued of Garcia Lopez versus Barr is submitted.
judges: McKeown, Bumatay, Mosman